# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JAMAL BASIM EL-AMIN,

        Petitioner,               Case. No. 2:18-CV-10919

                                           Hon. Denise Page Hood

v.

O'BELL WINN,[1] WARDEN,

        Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR HABEAS CORPUS [ECF NO. 1], (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS

     Petitioner Jamal Basim El-Amin, currently in the custody of the Michigan Department of Corrections, has filed a *pro se* petition for the writ of habeas corpus challenging his convictions and sentence. El-Amin was convicted after a jury trial in the Wayne Circuit Court of possession with intent to deliver less than 50 grams of heroin, Mich. Comp. Law § 333.7401(2)(a)(iv), second violation, Mich. Comp. Law § 333.7413(1)(a); possession with intent to deliver less than 50 grams of cocaine, Mich. Comp. Law § 333.7401(2)(a)(iv); carrying a concealed weapon, Mich. Comp. Law § 750.227; felon in possession of a firearm, Mich. Comp. Law §

---

[1] The Court amends the caption to reflect the name of Petitioner El-Amin's current warden. See Rule 2(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

750.224f; and possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Law § 750.227b.

As explained further below, the Court will deny the petition because El-Amin's claims are without merit. The Court will also deny a certificate of appealability and permission to appeal *in forma pauperis.*

## I. FACTUAL BACKGROUND

The Michigan Court of Appeals summarized the facts of Petitioner's case as follows:

> [O]n the day of defendant's arrest, [Detroit police officer Allen Ibrahimovic] and his partner, Detroit police officer Dietrich Spidell, were traveling on Interval Street toward the intersection of Lauder Street in Detroit. Both officers testified that Spidell was driving and Ibrahimovic was riding the passenger's seat. Ibrahimovic testified that when the officers reached the intersection, he observed defendant on Lauder approximately 36 feet from the intersection. The officer further testified that he watched defendant get out of his car parked on Lauder, look up toward the marked police car, raise his right elbow 90 degrees, grab his right waist, and walk quickly toward an abandoned house nearby. Ibrahimovic testified that he and Spidell turned down Lauder and pursued defendant. After Spidell stopped the car in the middle of the street, Ibrahimovic got out and pursued defendant. Ibrahimovic said that he saw defendant drop a plastic bag onto the grass between the driveway and the abandoned house. Ibrahimovic estimated that he was approximately 10 feet behind defendant by the time defendant reached the side entrance of the abandoned house. Because the house did not have a door, Ibrahimovic said he saw defendant enter the house, pull out a firearm, and throw it down a staircase located just inside the side entrance of the abandoned house. Ibrahimovic testified that he did not go into the house at that time. Instead, he called for backup and

2

ordered defendant out. The officer said that defendant complied with his command and walked out with his hands up. The plastic bag contained heroin and cocaine, and Ibrahimovic recovered a rusted revolver from the bottom of the staircase.

Testifying on behalf of defendant were Lashonna Veal and Rodney Moore, who lived next door and across the street from the vacant house, respectively. Veal testified that she observed defendant talking on his cellphone and relieving himself near the doorway of the vacant house. Two police officers arrived and one of the officers began shouting, "Show me your hands," at a man in a green shirt walking down the driveway of the house on the far side of the vacant house. She said that defendant was walking down the driveway of the vacant house at the same time, but they could not see him because of the bushes. Then, the officer yelled at defendant to show them his hands, grabbed defendant, handcuffed him, and took him to the police car, where the other officer searched him. When backup arrived, one of the original police officers went into the vacant house with three additional officers and, after a few minutes, the officers came out of the house with a gun, several bags, and a box of bullets. Testifying similarly, Moore said he was mowing his grass when he saw defendant go toward the bushes on the side of the vacant house to relieve himself. The police arrived, ordered defendant to show his hands, searched him, and put him in the back seat of their car. Then, other police officers arrived, went into the vacant house, and came back out with a black gun and what Moore assumed were drugs.

Finally, defendant also testified that he was relieving himself in the bushes by the side door of the vacant house when an officer pointing a gun at him told him to "freeze." He said that the officer grabbed him and took him to the police car, where officers searched him, handcuffed him, and placed him in the car. Defendant said that these officers and others that arrived on the scene went into the vacant house and came back out about 10 minutes later carrying "items." Neither Veal, Moore, nor defendant testified that officers founds drugs or a gun when they searched defendant.

*People v. El-Amin*, 2017 WL 2263098, at *1–*2 (Mich. Ct. App. May 23, 2017).

Petitioner was convicted by a Wayne County Circuit Court jury of all charges. He was originally sentenced to a five-year determinate term of incarceration for a second felony-firearm offense, one to twenty years for the drug counts, and one to ten for the weapons convictions. (11/13/2015 Sent. Tr. at 14-15, ECF No. 11-9, PageID. 533-34.) Because Petitioner did not have a prior felony-firearm offense, he was resentenced three days later at the request of the prosecution to a two-year fixed term for the first offense. (11/16/2015 Sent. Tr. at 3-4, ECF No. 11-10, PageID. 540-41.) The sentencing court changed the remaining sentences to three to twenty years' imprisonment for the drug convictions and two to five years on the CCW and felon in possession counts. (*Id*. at 4, 10, PageID. 541, 547.) Regardless of length, the felony-firearm term is served consecutively to the other sentences, which run concurrently. (*Id*. at 10, PageID.547.)

Petitioner El-Amin filed a direct appeal in the Michigan Court of Appeals, arguing the same four claims he raises now. The court of appeals affirmed Petitioner's convictions and sentences. *See El-Amin*, 2017 WL 2263098, at *1. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which denied leave in a form order. *El-Amin*, 501

Mich. 951 (2018) (Table). This petition followed timely. In it, Petitioner raises the following issues:

  I. The stop and seizure of defendant were not based on reasonable suspicion and the evidence should have been suppressed; the error was plain or, in the alternative, counsel was ineffective for failing to move to suppress the evidence.

  II. Defendant was denied a fair trial by the admission, over objection, of irrelevant evidence implying that he had committed or was about to commit a more serious crime with a stolen gun.

  III. Comments made by the prosecutor and the trial court denigrating the defense and bolstering the credibility of prosecution witnesses denied defendant a fair trial.

  IV. The trial court did not have the authority to increase the minimum terms of defendant's four valid sentences.

## I. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved

> an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

The Supreme Court explains that "a federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). AEDPA "imposes a 'highly deferential standard for evaluating state-

court rulings,' and 'demands that [they] be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)) (alteration in original). To obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III. ANALYSIS

### A. Claim I: Stop and seizure

The Michigan Court of Appeals analyzed this issue under a plain error standard, because Petitioner did not file a motion to suppress the challenged evidence. *El-Amin*, 2017 WL 2263098, at *2. The court explained the facts and its analysis of the stop and seizure as follows:

> [W]hen Spidell and Ibrahimovic began their pursuit of defendant by turning down Lauder [St.], there may have been a show of authority at that point in time. However, as Ibrahimovic continued to pursue defendant on foot, defendant dropped the

> plastic bag in the lawn, entered the abandoned house, and threw his handgun down the basement steps. At that point, Ibrahimovic had not physically restrained defendant and defendant had not yet submitted to the officer's authority. Thus, defendant was not seized at the time he is said to have discarded the bag of narcotics on the lawn or thrown the handgun down the basement stairs of the abandoned house. Instead, defendant finally submitted to Ibrahimovic when defendant voluntarily gave himself up and exited the abandoned house with his hands up.

*El-Amin*, 2017 WL 2263098, at *2. The court concluded, "the Fourth Amendment could not have been implicated before defendant's arrest, and defendant effectively abandoned the plastic bag and handgun." *Id*. (citations omitted). Presuming the correctness of the state court's factual determinations as it must, *Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007), the Court finds its analysis of Petitioner's search and seizure claim not unreasonable.

If the state "has provided an opportunity for full and fair litigation of a Fourth Amendment claim," the Constitution does not mandate federal habeas relief "on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976). To evaluate that "full and fair" opportunity, federal courts must inquire "whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim" and "whether presentation of the claim was in fact frustrated because of a failure of that

mechanism." *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000) (citing *Riley v.Gray*, 674 F.2d 522, 526 (6th Cir. 1982)). The Sixth Circuit has repeatedly found that Michigan has such a procedural mechanism. *Markham v. Smith*, 10 Fed. Appx. 323, 327 (6th Cir. 2001); *Machacek,* 213 F.3d at 952.

Where the mechanism exists, a petitioner raising a Fourth Amendment must establish that the mechanism failed and that he was "somehow prevented . . . from litigating his claims." *Machacek,* 213 F.3d at 952. Petitioner does not argue failure of the state's procedural mechanism, and indeed, he was able to raise this claim in both the state court of appeals and supreme court. The state court decisions rejecting Petitioner's Fourth Amendment challenge are supported by *Stone* and related Sixth Circuit decisions. 428 U.S. at 482; *see also Machacek*, 213 F.3d at 952.

Petitioner argues in the alternative that counsel was ineffective by failing to move for suppression of the evidence. But courts will not find attorneys constitutionally ineffective for a failure to take futile action or raise a frivolous argument. *Holmes v. United States*, 281 F. App'x 475, 479 (6th Cir. 2008) (citing *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999)).

**B.    Claim II: Admission of irrelevant evidence**

9

Petitioner next argues he was denied a fair trial by the introduction of irrelevant evidence against him. Over defense objection to the prosecutor's question, Officer Ibrahimovic testified that, from his experience, people deface serial numbers on guns because "the gun was stolen" or "[i]t was used in a crime, or it is about to be used in a crime." (10/14/15 Trial Tr. at 17, ECF No. 11-7, PageID. 359.) The Michigan Court of Appeals rejected Petitioner's argument, finding that such an evidentiary error "is not a ground for reversal" unless the defendant can demonstrate, in the context of the entire case, "that it is more probable than not that the error was outcome determinative." *El-Amin*, 2017 WL 2263098, at *4. (citing *People v. Lukity*, 460 Mich. 484, 495, 496 (1999)). Because the defaced serial number testimony only arose in that one instance, and the prosecutor did not refer to it during her closing argument, "that single mention was insufficient in light of the other testimony against Petitioner, to demonstrate a different outcome would have occurred without the testimony." *Id*.

The state court findings were not unreasonable. The standard for habeas relief for state court evidentiary rulings is "not easily met." *Wilson v. Sheldon*, 874 F.3d 470, 475 (6th Cir. 2017). If an evidentiary ruling is "especially egregious and 'results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief.'" *Wilson*, 874 F.3d

at 475 (quoting *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)); *see also Estelle v. McGuire*, 502 U.S. 62, 68 (1991). But the state retains "wide latitude with regard to evidentiary matters under the Due Process Clause." *Id*. (citing *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)).

In addition, in the absence of false evidence or evidence that otherwise violates a "specific constitutional prohibition," a prosecutor's elicitation of irrelevant testimony does not rise to the level of a due process violation. *Wade v. White*, 120 F. App'x 591, 594 (6th Cir. 2005). Here, the brief testimony on the purposes of defacing the serial number, a generalization not directed at Petitioner, does not rise to a "denial of fundamental fairness." *Wilson*, 874 F.3d at 475. Petitioner is not entitled to habeas relief on this issue.

**C.** Claim III: Prosecutor and trial court comments

Petitioner next claims that both the prosecutor and the court denigrated the defense and bolstered the credibility of prosecution witnesses. The court of appeals described the circumstances as follows:

> During closing argument, in an attempt to stress inconsistencies in the police officers' testimony, defense counsel argued that Ibrahimovic said "two things": "One, we were stopped at the intersection, that's when I saw [defendant]. Two, we were still approaching, that's when I saw [defendant]." The prosecution objected, contending that defense counsel's statement was "a mischaracterization of the facts." The trial court said it did not recall that being the officer's testimony, but

> defense counsel's comments were argument and the court would allow it. Defense counsel next recounted Spidell's testimony that the officers were heading eastbound when they made a U-turn and referred to it as a "third story." This drew another objection from the prosecution, who insisted, "It's not a third story."

*El-Amin*, 2017 WL 2263098, at *5. The trial court agreed with the prosecutor, saying, "[i]t isn't [a third story]." (10/14/15 Trial Tr. at 135, ECF No. 11-7, PageID. 478.) The court then addressed defense counsel: "Move on. I just disagree with you . . . on that." (*Id*.)

The court of appeals rejected Petitioner's argument that the prosecutor was attempting to show that "defense counsel was intentionally trying to mislead the jury," and found her remarks not improper. *Id*. Similarly, the court said that it did not find the judge's remarks to be "deep-seated favoritism or antagonism, or even criticism or hostility," criteria to find a constitutional violation. *Id*. at *6. The state court's ruling on this issue was not unreasonable.

First, "a prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). "'[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Moore v. Mitchell*, 708 F.3d 760, 799

(6th Cir. 2013) (citing *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). Even where prosecutors' statements are so extreme as to be "universally condemned," the inquiry remains whether due process was denied. *Darden*, 477 U.S. at 181. The *Darden* Court explained that the petitioner was not deprived of a fair trial where "[t]he prosecutors' argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent." *Id*. at 181-82 (citation omitted).

On habeas review, AEDPA raises the bar even higher than the "high standard" set by *Darden*. *Halvorsen v. White*, 746 Fed. App'x 489, 499 (6th Cir. 2018). To obtain habeas relief, "[t]he misconduct must so clearly violate *Darden* that the state court's failure to identify it was not just erroneous, but 'objectively unreasonable.'" *Id*. at 497 (citing *Williams*, 529 U.S. at 409).

Here, the court of appeals was not unreasonable to find the prosecutor's challenges to defense counsel's argument were proper. It called the prosecutor's remarks a "common objection, arguing that defense counsel's characterization did not comport with the officers' actual testimony." *El-Amin*, 2017 WL 2263098, at *5. The prosecutor's challenge did not invade Petitioner's rights nor otherwise implicate due process.

Similarly, the standard to find judicial bias was not met. The minimum requirement of due process "requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (citing *Withrow v. Larkin*, 421 U.S. 35, 46 (1975); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821-822 (1986); *Tumey v. Ohio*, 273 U.S. 510, 523 (1927)). But "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Further,

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

*Id.*

Petitioner argues that the court was "sending a message" in support of the police officers' testimony and implying that defense counsel was attempting to mislead the jury. (Pet. at 33, ECF No. 1, PageID. 33.) But messages and implications are insufficient, because even hostile remarks typically do not demonstrate bias, and this record reflects no favoritism or antagonism. *Liteky*, 510 U.S. at 555. The court of appeals was not

unreasonable to reject Petitioner's claims against the court and prosecutor.

**D.**     Claim IV: Unauthorized increase in the sentence minimum terms

Petitioner's last claim is that the trial court was without authority to increase his sentence for four of the five counts on which he was convicted. Petitioner returned to court three days after his original sentence, because the prosecutor discovered that he did not have the prior felony-firearm conviction the court relied on to impose a mandatory, enhanced sentence of five years on that charge. *El-Amin*, 2017 WL 2263098, at *6. On resentencing, Petitioner received a two-year mandatory sentence for the felony-firearm count, three to twenty years on the drug counts (increased from the original sentence of one to twenty years) and two to five years on the other weapons counts (up from one to five). *Id*. The Michigan Court of Appeals upheld the resentencing, reasoning that because the trial court relied on inaccurate information of the existence of the prior conviction when it imposed the original sentence, resentencing on all counts was proper. *Id*. at *7.

Offenders possess a constitutional right not to be sentenced on the basis of "misinformation of constitutional magnitude." *See Roberts v. United States*, 445 U.S. 552, 556 (1980) (quoting *United States v. Tucker*,

404 U.S. 443, 447 (1972)). A sentence based on extensively and materially false information that the prisoner had no opportunity to correct violates due process. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). Whether Petitioner had a prior felony-firearm conviction is not an error of "constitutional magnitude," especially as ultimately, the error correction was in Petitioner's favor.

Petitioner's only citation to federal authority on this claim was to N*orth Carolina v. Pearce*, 395 U.S. 711 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989), which analyzed judicial vindictiveness at resentencing to determine what constitutional limitations may apply. *Pearce* requires judges to state on the record their rationale for an increased sentence after reconviction but does not bar such increases. *Id*. at 726. And *Pearce*'s purpose was to prevent potential retaliatory sentences from deterring defendants from exercising their rights to appeal or take collateral action. *Id*. at 725. *Pearce* does not apply here, because this was not a reconviction after appellate review, but error-correction in the same court a mere three days after the original, erroneously enhanced felony-firearm sentence was imposed. In addition, on resentencing, Petitioner's total minimum sentence actually *decreased*, from six years (the mandatory five years plus concurrent one-year minimum sentences for the

drug and weapons counts to run consecutively to the mandatory term) to a minimum of five (the mandatory two years plus the three-year minimum for the other charges).

Most importantly, a sentence whose length is within statutory limits is generally not subject to appellate or habeas review. *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004) (citation omitted); *Cook v. Stegall*, 56 F. Supp.2d 788, 797 (E.D. Mich. 1999). Such a sentence "will not [be] set aside, on allegations of unfairness or an abuse of discretion . . . unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking." *Doyle*, 347 F. Supp. 2d at 485. In fact, "federal habeas review of a state court sentence ends once the court makes a determination that the sentence is within the limitation set by statute." *Id*. (citing *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000); *Allen v. Stovall*, 156 F. Supp. 2d 791, 795 (E.D. Mich. 2001)).

Here, the attorneys agreed Petitioner's calculated guideline range was between ten and forty-six months. (Resent. Tr. at 8, ECF No. 11-10, PageID. 545.) Petitioner's new minimum sentence of three years (36 months) is within that range and is thus neither arbitrary nor shocking. *Doyle*, 347 F. Supp. 2d at 485. Petitioner did not object to the new sentence at his resentencing. The trial court, in its discretion, resentenced

Petitioner to higher minimum sentences on the drug convictions because the trial court based its first sentence on the inaccurate information that Petitioner would be serving a mandatory five years, rather than the two years, for the felony firearm conviction. Petitioner is not entitled to habeas relief for his new sentence.

## IV. ORDER

For the reasons stated above, the Court **DISMISSES WITH PREJUDICE** the petition for writ of habeas corpus.

Because the Court believes that no reasonable jurist would find that the claims presented have merit, *see Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000), **IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner is **DENIED** leave to appeal *in forma pauperis*, because an appeal would be frivolous and could not be taken in good faith. 28 U.S.C. § 1915(a)(3); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 764-65 (E.D. Mich. 2002).

**SO ORDERED**.

s/Denise Page Hood  
Chief Judge, United States District Court

Dated: July 7, 2021